I now call the final case for argument this morning, 20-1073 Arellano v. Wilkie. Mr. Barney, whenever you're ready. Good morning, Your Honors. May it please the Court. The question in this appeal is whether the one-year filing provision in Section 5110B1 of the Veterans Statute is amenable to equitable tolling. We think the answer to this question largely depends on whether the Erwin presumption applies because we don't believe the government can rebut the Erwin presumption if it applies. So I'd like to begin with that question. I appreciate that, but can I ask you to begin a little earlier than that, which is the question of whether or not our precedent in Andrews and maybe one or two other cases would require that even if we agreed with you on the substance, this Court would have to take this issue en banc. Yes, Your Honor. I'd be happy to do that. I'll start with Andrews and then of course I'll address any other cases you would like me to. We do not believe Andrews needs to be reversed in order to reach the outcome that we are urging here. In Andrews, the Court held only that principles of equitable tolling, quote, as claimed by Andrews, close quote, are not applicable to 5110B1. And Andrews' argument in that appeal was limited to the VA's failure to notify her about the one-year deadline. And this Court held that that type of argument, which is based on the VA's duty to assist, is not available as a basis for equitable tolling. I appreciate that one phrase that you picked out of that paragraph. But it's a long paragraph that goes on to, I think, at least arguably, suggest that it was a ruling with regard to 5110 and equitable tolling, 5110B1, and not just as it would apply in this case. That's the way the Court of Veterans Claims has read it, correct? That's correct, Your Honor. That's the way in our court, notwithstanding our esteemed colleague Judge Newman, who's on the phone with us now, concurrent, calling out her reading that it was more limited, nothing in any court opinion has suggested that it would be capped, right? I think that's fair, Your Honor. Okay. So I think that that's probably the biggest issue with it. We would agree with Judge Newman that Andrews shouldn't be interpreted as broadly as you think it should. How do we get around the categorical statement in Butler? Well, I'm going to try to answer your question by just referring back to Andrews, but if I missed the mark, please let me know, Your Honor. Okay. What the CAVC really relied on here in Andrews was not the portion that Judge Post was just referring to. It was actually the discussion in the later part of the decision that distinguished 5110B from a true statute of limitations. And for that, that seemed to be the basis for, to the extent that Andrews has been read more broadly to be a more encompassing holding. That portion of the holding, I think, has been abrogated by Supreme Court precedent. I think that portion of the holding has now been abrogated by Henderson, which made clear that the distinction between a statute of limitations or some other type of timing provision is not the deciding factor under Irwin. Instead, you have to go back to the statute itself and determine congressional intent, which is the Irwin analysis. Here's my problem with what you're saying. I understand what you're saying. I appreciate and I respect what you're saying. But the question is really whether there's enough clarity on this particular point in Henderson. I mean, you can call, you're calling our subject, though. Well, I mean, Henderson dealt with, I mean, they say we decide whether a procedural rule is jurisdictional. They're talking about Article III courts versus Article I tribunals and the adjudication and judicial review scheme. So I don't think you're frivolously pointing out that subsequent Supreme Court precedent might affect or influence our analysis of this question. The question is, what did you have that's most directly on point that would directly abrogate, in other words, Judge O'Malley's question, whether or not the court at a minimum would have to take this question en banc? Your Honor, I probably won't be able to improve on what I've already said other than I believe that under Irwin, in order for this court to actually reach a conclusion that a timing provision in the veteran statute is per se or categorically not amenable to equitable tolling, I believe the court would have had to gone through the Irwin analysis. And the court in Andrews simply did not do that analysis. It seemed to be looking more— This case is different than every other case, other than the ones where Lozano and Brockham. Every other case that I could find that's been cited, Supreme Court precedent, that is, deals with either whether it's a procedural rule or jurisdictional. It deals with the filing deadline in connection with a judicial or administrative review scheme. So I don't know of a case that really directly answers that point, this point, in the context of what we're talking about now, which is not an adjudicatory or a judicial review scheme, but rather what is this section called? Effective dates of awards. Right. Your Honor— It's not dispositive necessarily of the argument you're making, but it really does go, in my mind, to the heart of whether or not this is a different issue that has not been absolutely dispositively ruled on by the Supreme Court. Your Honor, thank you for the question, and I think your point is well taken. I would point you to the Young decision, and that case gets a little closer to the type of situation we have here because the limitation at issue in Young was a three-year look-back period that controlled how far back in time the IRS could go to recover past-due taxes from a bankruptcy estate. So that is what the government would now call a substantive limitation on the amount of recovery. I don't disagree with you. It's just that it gets closer. The question is whether it's close enough. Can I just—I'm sorry, I cut you off with this threshold issue, but I have a question now that goes to the merits or a little side question, which is what are the limits of the proposition you're espousing for us to accept? 5110 has—not a million, that's an exaggeration, but a whole lot of provisions in it. And leaving A aside, I have a question about A. But there are quite a number, maybe a dozen provisions that have the same language involving other types of claims, supplemental claims and all kinds of other claims. Is it your view that all of those provisions that say the date is one year after the date, et cetera, all of those would—equitable tolling will apply to? I assume you have the statute in front of you there. Am I misstating it? There are a lot of provisions. You are correct, Your Honor. It goes up to Section N as in Nancy, so there's at least a dozen different provisions. And you are also correct that the one-year deadline is a theme that runs throughout several of them, not all of them, but several of them have a one-year cutoff. More than several, I think there are at least—okay, go ahead. I'm not disagreeing with what you're saying, Your Honor. To answer your question, I think that under Irwin the presumption would apply the same to all of those provisions. Irwin says that when Congress passes a statute that includes a waiver of sovereign immunity for claims against the government, the presumption is that Congress does so with an implicit equitable tolling provision applied to that. So I can't think of a reason why it wouldn't—why it would apply to B and perhaps not some of the other ones. Okay. Well, let me then ask you. The elephant in the room is A because that's the vast proportion of claims that we're dealing with. And that doesn't have the exact language, but it does have kind of language that says the effective date of the original claim is the later of the date EVA receives the claim and the date that the veteran's entitlement to a benefit arose. Would you construe, therefore, that kind of provision that says—that would deprive the veteran— you're quiet, for example, in the same circumstance. Forget dating back to when he was in service. But you and me file a claim the same—you file a claim today. We have the exact same ailment. But I am incapable of filing that claim today, so I file it two years from now. So your award is going to be two years more worth of money than mine. Would equitable tolling apply under A, that circumstance? Your Honor, I'm a little hesitant to go beyond sort of what I've prepared here. So I apologize in advance if my answer is a little vague. I think it certainly could apply based on Erwin. But I do see that that language is worded a little differently. It doesn't jump out as a clear time bar in the way that Section B does. So I guess I have to be a little equivocal, and I apologize that I can't answer your question more directly. And just one more, and then I'll leave it to my colleagues. I apologize for consuming much of your time. But are you aware of—I mean, there are lots— there are an enormous number of federal statutes that deal with benefits such as this. The most apparent would be Social Security. And obviously there have been equitable tolling Erwin-type claims, but all of those that I'm aware of have dealt with district court review of Social Security benefits. But, I mean, I assume there are a vast number of federal statutes that might have similar provisions. Are you aware of any body of law, any other circuits or district courts, that have construed the language that you have in B going your way or going the other way under Erwin? I'm not aware of any that are exactly like the language in B. But, again, I would point, Your Honor, to the Young decision, which I don't think the court should overlook the Young decision because it is an important decision. It gets—I think it gets fairly close to the situation we have here because it is— I don't think the government would dispute that the issue, the timing provision in Young, was what the government would call a substantive limitation on the amount of recovery. And, nevertheless, the Supreme Court held that it was amenable to equitable tolling. And it would just be an odd result, in my opinion, if the outcome is that the government, the Internal Revenue Service, can benefit from equitable tolling when it's going against a taxpayer's estate, and yet a veteran can't benefit from equitable tolling during a period of time after service when they're not represented by counsel. And I just think that, to me, is a very stark—that would be a very unusual outcome. Unfortunately, and I understand why, but Young was—I don't think Young was— they're two Young cases, but I think the one you're referring to now was not cited in blue. And I understand why, because it was in rebuttal to Red. But we haven't heard yet the government's take on that. So we may ask the government for that. Okay. Your Honor, I see that I'm into my rebuttal time. I've consumed all of your time, so I want to turn it over to my colleagues if they have anything more that they'd like to ask. The only thing I would like to ask is what is your response to what we said in Burris about the Veterans Court not having broad equitable powers? Your Honor, I've read Burris, and I think that Burris largely falls in line with the Richmond decision in the sense that at least one of the claimants in Burris was very clearly asking for a freestanding equitable damages award. They had no basis in any statute. And that was also the situation in Richmond. And I think that's a very easy decision there because, as the court in Richmond said, you can't—the court just doesn't have the power to grant something where there's no statutory authority for it. I think our case is different than both Richmond and Burris because what Mr. Arellano is seeking does have statutory support. The only thing standing in the way of his relief is the timing provision that he's asking to be told. Can I ask one—I'm sorry, can I ask one further question? This came up in the Brocktown case, I think, where Justice Breyer talked about, you know, it was the IRS, and God knows how many times and days they have there and how confusing and disruptive to the administrative procedure it would be. What about the veteran space? I mean, you know, I've lost track, but there are probably— at one point there were 700,000 cases backed up at the BVA. Are we allowed—would we consider, at least in the context of what Congress intended, would we be able to—would that be a factor we would consider, whether opening this up to equitable tolling arguments, which involve their own set of facts and arguments, et cetera, would impact the filing deadlines and the ability of the Veterans Administration to timely, to the extent that they do and can, administer the statute? Your Honor, under Irwin, that particular consideration is not enumerated, but it's also not precluded. I think it would be reasonable to assume that that type of argument could be included in the government's attempt to rebut the Irwin presumption. Here, I don't think—taking that argument at face value, I don't think that's enough to rebut the presumption, because there's a difference between saying that a statute of limitations or a limitations provision is amenable to equitable tolling. That is not saying that it's necessarily going to lead to equitable tolling in every case. It's still the Veterans' burden to show entitlement to equitable tolling. So even in this case, I would— I'm not talking about the amount of money it would cost the government at the end of the day if equitable tolling applied. I'm talking about the procedural burden that would be supplied if this extra— I don't want to call it litigation, but if this extra issue were inserted into the proceeding. Right. Your Honor, I guess I would have to say that under Irwin, the argument should be available, but it would still have to be tied to some evidence that that was actually Congress' intent. I think if it's a freestanding policy argument that doesn't tie to a piece of legislative history or something that actually shows that that was part of Congress' intent, I don't think it would fit the bill under Irwin. Okay. Thank you very much. Thank you.  Thank you, Your Honor. Thank you. If there's any other questions, I don't know whether I should continue or— No, no, no. Do my colleagues have questions? No. No, we can wait. I can. Holly? Okay. No. Okay. Let's hear from Mr. Hunter. Is that correct? Have I got the right name? Yes, Your Honor. May it please the Court. Of course, much of what I intended to discuss was already discussed in question, so I'm happy to proceed discussing the Andrews decision, but I just wanted to note that much of what I will say may tread ground that the Court, of course, is already well aware of. Well, what you— I'm sorry. Go ahead, Kate. Sorry. I mean, so what is your response? If you say we disagree with you and we agree that Andrews was just— to the extent Andrews has been read by the Veterans Court to say that this is a categorical limitation on the exercise of equitable discretion here and that that is how we think Andrews should be read, if we agree Andrews was wrong, can we, as a panel, say that Andrews was abrogated and just move forward? Your Honor, I think I can give a clear answer on this. I think no. I think you have to take it up en banc. And the reason is not just the provision that was discussed by the Court earlier. Of course, Andrews' decision discusses Erwin and considers Erwin. It says equitable tolling is—here's what equitable tolling is. It's generally available. Here's Erwin. And then it says this is not such a case. That 5110 does not contain a statute of limitations that merely indicates when benefits may begin and provides for an earlier date under certain limited circumstances. Now, of course, you're familiar with that language. But that's the Court stating, different than stating that equitable tolling is not available in this case, that's a statement about the statute and its effect. And then that is further buttressed later in the opinion when discussing McKay. In McKay, it says we held that the claim did not seek to toll a statute of limitations in order to bring a claim that would otherwise be time-barred. Instead, to obtain benefits expressly prohibited by the statute, he asked the Court to apply equitable tolling to 5110G, which we declined to do, likewise Andrews. So the Court— Well, but wouldn't that be consistent with Bailey, which we have said now is reinstated as good law after Henderson? Well, that's a more complex question. I don't think so, Your Honor, because— Sorry, there's a lot going on with the Bailey-Henderson issue. First, there was a case we cited in our response brief, but there's a case called Martinez, which was on the book at the time of Andrews just a few months before, which stated, which would be contrary to Bailey, that Irwin did not apply to every possible time and limitation. And so if that was the holding of Bailey, it wasn't even on the books at the time of Andrews. Now, with respect to Henderson and Bailey, the interaction of those decisions, I think it's perhaps a little stretched by Mr. Arellano's brief. So Bailey says that the notice of appeal deadline to the Veterans Court can be tolled because Irwin says everything can be told unless you take a look, unless the presumption is rebutted. We don't find it rebutted. Now, Henderson in 2009 says, well, in the intervening time, the same provision comes up. And in the intervening time, the Supreme Court has clarified a lot about jurisdictional provisions. So with these— But Henderson gets reversed. That's right. Henderson gets reversed. But if you read the decision, the Supreme Court decision in Henderson, they're not talking about Irwin. They're not talking about reinstating Bailey. You can search the opinion for Irwin, and it doesn't come up at all. What they're saying is— We have said, didn't we say in James that Bailey was reinstated and is good law? I guess I would need to take a look at that. I may have missed that. But at most, what appears to be reinstated is the express holding of Bailey, which is that the notice of appeal deadline is tollable. Not this implicit general holding that Irwin applies to every timing limitation, which itself, of course, cannot be true, because we know that it doesn't apply to the jurisdictional timing provision. That's the entire premise of Henderson. So we know that the implicit holding that Irwin applies to every timing provision cannot be correct. Now, those jurisdictional provisions are not present here. But if Bailey was reinstated, it was at least reinstated in some modified format from its original form. Can I ask you about Young? I know it was in gray. It wasn't raised in blue for obvious reasons. So we haven't heard Mr. Barney express this as being the closest case. Granted, it's pre-Henderson. I think it's a 2002 case. Have you reviewed that? Can you tell us what, if any, impact you think that has on our analysis here? Yes, Your Honor. So I will say that in reviewing the reply brief and in preparing for this argument, I think that it's possible that our focus on the substantive limitation on recovery is raising to preclude the Irwin inquiry. I think that Mr. Arellano's brief probably has the right of it in that a substantive limitation on recovery would not preclude the Irwin inquiry, but rather would be a factor that the court would consider in whether the Irwin presumption was rebutted. Now, with regard to the effect of Young, I think that they at least stretch the holding a little bit that they're relying on. So in the brief, you find it stated as the holding is all limitations periods are substantive. But that's only the second clause of the sentence. The first clause of the sentence is, well, as petitioners use the term. So there's a large limiting scope there as to whether the attempt to use successive bankruptcy filings to create a loophole in the statute is substantive in the same way that 5110 is substantive. I don't know that Young considers anything like a statute in 5110 where the entire umbrella provision states that no retrospective benefits except under certain limited circumstances. And in all cases, those certain limited circumstances are limited to one year look back from very specific originating events. So I'm not sure that Young has a lot to do with this. It may have something to do with FLSA. Sorry. What about the question I asked your friend about the other provisions that might be affected by what we do here? I think his answer was kind of yes to the numerous provisions in 5110, that have the same language as 50, as B1. What about A1? If we were to agree with your friend here, would that have ramifications for our analysis of just the regular thing about the date of running the claim recovery running from the date of receipt of the application? Even the date of receipt. I don't even understand how it could be told because there is no time provision stated. It's simply stating that when the claim to allow polling against that rule would seem to vitiate the entire rule. Well, no, it's just like if I, if I had severe schizophrenia. And so I, and it came upon me five years ago. So for five years, a physician would say I was incapable of filing a claim and I file a claim five years later where equitable tolling would apply. I shouldn't get, I shouldn't, I shouldn't be penalized if I'm at my disability for the five years in which I wasn't able to file a claim. And since the amount of money I get runs from the time I file a claim, that's where equitable tolling might come in. I see your arm. I think that then I would point the court to Brockham where justice Breyer's discussing the potential for length to, for finding an equitable exception here to do violence, the language present in the statute. In that same a one, it said, it starts out with unless specifically provided otherwise in this chapter, the effective date of an award. I'll just finish my response based on an initial judgment. Please proceed. I was just, you know, I've been listening to this with great interest because I was thinking that it certainly would be helpful if we can to find a way of adding some specificity to accept the principles and to assure the principle that when we're dealing with veterans cases and a lot of the other aspects on which we have national policy to assure that when there's room in the law for interpretation that we apply it. So I was trying to figure out as I listened to the really cogent arguments on both sides as to what we might do in order to advance the stability of this law. And of course I was thinking that here we have a case where in principle equitable tolling because you have a psychological disorder is easy, but equitable tolling for 30 years based on that disorder gets to be more complicated and it would be without presenting a new issue that we haven't had a chance to explore to understand what might be done in this case to advance the stability and reliability of this law without turning it into a federal case whenever equities arise. So counsel, when I was disconnected, were you in rebuttal at that time? Your Honor, this is Andrew Hunter for the government. I was speaking. I think your question may be directed to Mr. Barney. No, I'm very interested in the government's position on how we might enhance and clarify and make more useful and more effective the equitable tolling principles. I see, Your Honor. Well, of course, our position is that equitable tolling, what we believe is in accordance with this court's precedent, that equitable tolling is not available for 5110. And that statute is very generous in giving prospective benefits to veterans from the time they file a claim. But why do you say no? Because it would have to be told for 30 years? I mean, it's your position based on the somewhat, I'll call them extreme, factual circumstances or some general policy. Your Honor, we believe the policy is stated in the statute. It says unless specifically provided otherwise in this chapter, and that's the general prohibition. Unless specifically stated otherwise, the effective date of the claim is the date the claim was received. And then there are a list of exceptions to that principle, each of them limited to one year. Of course, that limitation to one year does invoke the extremity of the claim on the other side. I'm loathe to argue, I am not prepared to argue how far beyond a year it would make sense to go. But I don't think that the statute authorizes retrospective recovery beyond the exceptions that are listed, and certainly not in the scope requested by Mr. Arellano. If someone has schizophrenia for more than one year, it doesn't seem as if the principles of fair dealing would somehow draw the line that would be almost arbitrary in those circumstances. Again, here we have 30 years, and I'm trying to understand how much the particular facts of the case that comes before us need to be considered as opposed to the bright line. I see, Your Honor. Well, obviously our position is that we're holding at the bright line, and that's what we believe the statute states in this court precedent case. If the court disagrees, then it would probably be incumbent to remain for factual findings. My understanding is that the record contains some lay statements indicating that Mr. Arellano was disabled at the time, and then a doctor's opinion, which is perhaps I think a bit conclusive, but is a physician's opinion that he was disabled from the time of discharge. But I don't believe the VA has yet made any determination as to his disability, in large part because there would be a mood determination because of the way the VA construes 5110. Can I just move just to the other provisions? Are there other statutes that you're aware of that govern Social Security claim processing, welfare benefit claim processing, unemployment benefit claim processing that have the language similar to B-1? Your Honor, I lamented when I heard your question, Mr. Barney, in this regard because I also have a preparation for you. I wish that I had. It's an obvious question, and obviously we both should have considered it, and I have not prepared, so I can't answer that. Thank you. If my colleagues have nothing else, Mr. Hunter, for you, why don't we go back to Mr. Barney for his rebuttal time? Your Honor, if I may clarify one point? Yes, sure. It was simply that when I had retreated in terms of the substantive limitation on recovery, I, of course, did not mean to retreat over our overall opinion, our overall view of the statute, which, as I've already said, is not in the statute. My point, we believe, is that Congress is not authorizing benefits requested here, and that, therefore, they're not in the statute. That's all. Thank you. Mr. Barney? Thank you, Your Honor. Of course, I'd like to answer Judge Newman's question about the 30 years, but before I did, I also wanted to point out that Bailey has been recognized as being reinstated, and I would refer the Court to the Sneed decision, which is cited in our reply brief, and I believe it's been recognized in other decisions as well. But, of course, Bailey is a Henderson-like decision, right, of appealing whether an Article I court is different than an Article III court for purposes of processing a claim against the government in the administrative adjudication of that claim? Am I pulling that correctly? They certainly got into that in Henderson, and Bailey, I don't recall that it was necessarily Article I versus Article III. I think Bailey applied to Irwin and declined to draw any distinction between the fact that the provision at issue was a timing of review statute as opposed to a statute of limitations, and that's what ended up getting tripped up in the Henderson loop that went up to the Supreme Court and then back down. That's my recollection, Your Honor. With respect to Judge Newman's question, you know, there is some there does seem to be some confusion about the two different parts of Irwin. Irwin has a part that discusses whether or not a statute is amenable to equitable tolling, and then, of course, it has another discussion after deciding that that statute was, in fact, amenable to equitable tolling, about whether equitable tolling should apply based on the facts of that case. And your question, Judge Newman, really goes to that second prong, and what we're trying to get at here is we have what we consider to be an error being propagated by the CABC, a misinterpretation of Andrew's, and we're trying to make sure that doesn't continue to propagate. I think that the CABC I think there's a very well-developed body of law regarding whether equitable tolling can apply to a particular set of facts, and that body of law will continue to remain in place regardless of what this Court decides in terms of whether Irwin applies to 5110B1, and it serves as an effective gatekeeper for equitable tolling claims. As the Supreme Court has pointed out, most timing provisions are amenable to equitable tolling. It's the exceptions that aren't. And yet we don't have a flood problem in terms of equitable tolling swallowing civil litigation, swallowing other benefits systems. So I don't know whether that fully answers Judge Newman's question, but that's the way we're viewing this, that it's important to fix the first part of the Irwin analysis before we even look at the second part. Thank you. That's helpful. It's really to understand what we can accomplish and contribute to stability and so that people who do have an authentic basis for tolling don't have to end up with five years' worth of litigation in order to cross that bridge. Your Honors, unless you have any other questions, I don't have anything further. Thank you very much. We thank both sides. Sorry for the disruption and the cases that did it.